UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| CHARLES PARSONS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 1:16-cv-02343-JMS-TAB |
| GILBERT Ms., | ) | |
| Defendant. | ) | |

**Entry Granting in Part and Denying in Part
Defendant's Motion for Summary Judgment**

## I. Introduction

Charles Parsons brought this 42 U.S.C. § 1983 action against Ariene Gilbert, his former parole officer. Mr. Parsons alleges that while he was on parole, his state-mandated GPS ankle monitor began to cause severe pain and injury to his leg. He asserts two related Eighth Amendment claims against Ms. Gilbert, contending that she was (1) deliberately indifferent to his serious medical needs by not providing or seeing to his medical treatment, and (2) deliberately indifferent to the pain and injury caused by the GPS ankle monitor by not assisting with the removal or loosening of the monitor. Ms. Gilbert seeks summary judgment on both claims. On the first claim, she argues that she owed no duty to provide medical care to Mr. Parsons because he was not a prisoner in the state's custody. On the second claim, Ms. Gilbert argues she was not deliberately indifferent to the harm and pain caused by the monitor, and that in any event, she is entitled to qualified immunity.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ.*

*P*. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

### III. Facts Not in Dispute

For purposes of summary judgment, the material facts are not generally in dispute. There is no particular disputed fact that is material to the resolution of the summary judgment motion because, for the most part, the operative questions are questions of law. These facts are taken from the undisputed fact section of Ms. Gilbert's brief, which are uncontested by Mr. Parsons.

Charles Parsons was released to parole by the Indiana Department of Correction in early 2014. He was required to wear a GPS ankle monitor that was affixed to his leg at the direction of

the state. He was required to obtain his parole officer's approval for many activities away from his home, including visits to a doctor in Kentucky. In June of that year Ms. Gilbert became Mr. Parsons' parole officer. Two months later, sometime in August, Mr. Parsons' leg became swollen and bloody underneath the monitor. When Ms. Gilbert visited Mr. Parsons at his home in early August, he asked her to help him get the monitor removed, but she would not help him. Approximately two weeks later Mr. Parsons saw Ms. Gilbert in her office and again asked for help with the monitor. She told him that the person who could take it off was on vacation for "the next week or so." A few days later when Mr. Parsons saw an audiologist, that doctor saw his leg and immediately sent Mr. Parsons to the emergency room. Emergency room doctors were told by someone, not Ms. Gilbert, that the monitor could not be cut off, so they prescribed medication for "open lesions and [an] ulcerous foot . . . and . . . [an] infection." The next day Mr. Parsons took a certificate from the hospital to another state official, a SOMM instructor, who had the monitor cut off.

## IV. Analysis

Ms. Gilbert seeks summary judgment on both of Mr. Parsons's deliberate indifference claims.

A. *Deliberate Indifference to Serious Medical Needs*

Ms. Gilbert seeks summary judgment on Mr. Parsons's medical care claim arguing that because Mr. Parsons was a parolee, not an inmate, she had no duty to see to his medical needs and provide him medical care and, therefore, she cannot be liable for being deliberately indifferent to Mr. Parsons's serious medical needs.

In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Court recognized the state's obligation to provide adequate medical care to its *prisoners*. *Accord*, *Farmer v. Brennan*, 511 U.S. 825, 832

(1994). But a parolee, who is, albeit, in a form of custody, is nevertheless not a prisoner, and the affirmative duty imposed on the state to provide medical care to its prisoners does not extend to a non-prisoner parolee. This rationale was explained in *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). There, the Court addressed the state's duty to a child who had notified state officials of his father's abuse. In rejecting the child's argument that an affirmative duty to protect him existed, the Court examined and explained its *Estelle* holding:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety – it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, ***but from the limitation which it has imposed on his freedom to act on his own behalf***.

*Id.* at 199–200 (citations omitted; emphasis added). Because Mr. Parsons was a parolee, although subject to the terms of his parole agreement, he did not suffer sufficient limitation on his freedom to "act on his own behalf" that prevented him from obtaining medical attention on his own. Therefore the government – and Ms. Gilbert – did not have an affirmative duty to assume responsibility and provide him medical care. Mr. Parsons had the ability to, and indeed did, seek and receive medical care on his own. This particular level of freedom removes Mr. Parson from the group of persons for whom the state must provide medical care.

Ms. Gilbert's motion for summary judgment on the deliberate indifference to serious medical needs claim is **granted**. That claim is **dismissed**.

B. *Deliberate Indifference to the Infliction of Pain and Harm*

Ms. Gilbert also seeks summary judgment on Mr. Parsons's claim that she was deliberately indifferent to the fact that the state-mandated GPS ankle monitor was causing him intense pain and injury. She also argues that she is entitled to qualified immunity on this claim. The qualified immunity argument will be addressed first.

Certain officials, including police officers and other state actors who perform "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001); *Wilson v. Layne*, 526 U.S. 603, 609 (1999). This doctrine, known as "qualified immunity," provides not only a defense to liability, but immunity from suit. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To gain the protection of the doctrine, a defendant must show that (1) the plaintiff has not demonstrated "a deprivation of an actual constitutional right" or (2) that the right at issue was not "clearly established at the time of the alleged violation." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).

Mr. Parsons need not point to an identical case finding the alleged violation unlawful, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (*per curiam*) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "[W]e look first to controlling Supreme Court precedent and our own circuit decisions on the issue." *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000). If no controlling precedent exists, "we broaden our survey to include all relevant caselaw in order to determine 'whether there was such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time.'" *Id*.

(quoting *Cleveland-Perdue v. Brutsche*, 881 F.2d 427, 431 (7th Cir. 1989)). In the absence of controlling or persuasive authority, Mr. Parsons can demonstrate clearly established law by proving that Ms. Gilbert's conduct was "so egregious and unreasonable that . . . no reasonable [official] could have thought [she] was acting lawfully." *Abbott v. Sangamon County*, 705 F.3d 706, 724 (7th Cir. 2013); *see also Jacobs*, 215 F.3d at 767 ("In some rare cases, where the constitutional violation is patently obvious, the plaintiffs may not be required to present the court with any analogous cases. . . .").

Thus the relevant dispositive inquiry in this case in determining whether a right is clearly established is whether it would be clear to a reasonable official that her conduct was unlawful in the situation she confronted. *Saucier*, 533 U.S. at 202.

    1. *Deprivation of an Actual Constitutional Right*

     (a) *Actual Constitutional Right*

The constitutional right at issue here is the Eighth Amendment's proscription against cruel and unusual punishment. "'[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (some internal quotation marks omitted). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). "Infliction of pain that is 'totally without penological justification' is per se malicious." *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004), quoting from *Hope v. Pelzer*, 536 U.S. 730, 737 (2002), in turn quoting *Rhodes,* 452 U.S. at 346. Mr. Parsons had an actual constitutional right to be free from unnecessary and wanton pain and injury caused by the continuous presence of the ankle monitor. The pain and injury caused by the ankle monitor was totally without penological justification.

(b) *Deprivation of that Right*

Ms. Gilbert contends, in part, that it was reasonable for her to not do anything about the pain Mr. Parsons complained of because she knew he had a doctor appointment in the near future. A reasonable fact finder could determine that despite that knowledge, Ms. Gilbert was deliberately indifferent to Mr. Parsons's current pain and suffering by allowing it to continue, even if just for a few days. Additionally, the doctor appointment was with an audiologist – Mr. Parsons's hearing doctor – not normally the medical specialty dealing with injuries to limbs and open wounds.

Ms. Gilbert also contends that Mr. Parsons, even though he was a parolee, was not a prisoner and therefore could have sought emergency treatment on his own at any time. That is irrelevant to whether Ms. Gilbert's actions in twice declining to address Mr. Parsons's pain was an unconstitutional deliberate indifference to his pain and injury. Mr. Parsons's pain and injury was ongoing. Additionally, the fact that when he did seek treatment in an emergency room he was unable to have the ankle monitor removed is evidence that, if true, a fact finder could take into account to find that Ms. Gilbert was deliberately indifferent to Mr. Parsons's pain and injury. This is relevant in light of Ms. Gilbert being one of only a very few people who could have the ankle monitor removed.[1]

Ms. Gilbert's argument that Mr. Parsons only told her about the ankle monitor problem on two occasions is also unpersuasive, as there is no minimum number of times that an official would

---

[1] Ms. Gilbert has not argued that she lacked authority to either remove, adjust, or relocate the ankle monitor. She has not argued that she lacked authority to request another responsible state official do so. Likewise, there is no evidence that the SOMM instructor who eventually removed the monitor is the person referred to by Ms. Gilbert who was authorized to adjust the ankle monitor for Mr. Parsons. There is no evidence that the person authorized to take the monitor off or adjust it was on vacation, unavailable, or that another person had been designated to handle urgent matters with GPS ankle monitors during the aforementioned person's absence.

need to be put on notice about an unconstitutional condition before the law required some remedial action to be taken. A reasonable fact finder could determine that Ms. Gilbert showed deliberate indifference following the first time Mr. Parsons asked her for help with the ankle monitor.

In sum, there is evidence upon which a reasonable finder of fact could conclude that Ms. Gilbert deprived Mr. Parsons of his right to be free from the pain and injury caused by the ankle monitor.

2. *Clearly Established Right*

The next inquiry is whether the actual constitutional right at issue is clearly established. "A plaintiff can demonstrate that the contours of a constitutional right are so established as to make the unconstitutionality obvious." *Ault v. Speicher*, 634 F.3d 942, 946 (7th Cir. 2011). At the outset, the state has a very limited but otherwise affirmative duty to "assume *some* responsibility for [Mr. Parsons's] safety and general well-being" while he remained under its supervision and subject to the restrictions of parole. *DeShaney,* 489 U.S. at 200 (emphasis added). What responsibility is owed depends on the nature and scope of the restrictions placed on the individual's freedoms. *Id*. As concerns the ankle monitor, Mr. Parsons suffered from a complete lack of freedom – he could not loosen it, remove it, or otherwise adjust it. Thus, when it became the source of Mr. Parsons's pain and injury, the ability to remedy the pain and injury was held solely by the state.

With the right to be free from unnecessary and wanton pain without penological justification, and the ability to remove or alleviate that pain being completely with the state, it follows that Ms. Gilbert's duty to do something about the pain and injury was constitutionally obvious. While Mr. Parsons was not a state prisoner at the time of his ankle injury, nevertheless as a parolee he was in a form of custody. *Hankins v. Lowe*, 786 F.3d 603 (7th Cir. 2015); *Jones v. Cunningham*, 371 U.S. 236, 241–43 (1963); *Cochran v. Buss*, 381 F.3d 637, 640 (7th Cir. 2004);

*White v. Indiana Parole Board*, 266 F.3d 759, 763 (7th Cir. 2001); *Wilson v. Flaherty*, 689 F.3d 332, 336 (4th Cir. 2012). Ms. Gilbert was well aware of Mr. Parsons's status as being in a form of custody as she directed many facets of his life and movements. She knew that Mr. Parsons had no authority to loosen or remove the GPS ankle monitor. This law, too, was clearly established well before Ms. Gilbert's interactions with Mr. Parsons. Therefore, if Ms. Gilbert was aware of the pain and suffering experienced by Mr. Parsons due to the ankle monitor, and did nothing, she could be found to have violated Mr. Parsons's constitutional rights.

The contours of this clearly established constitutional right can also be found in well-settled law concerning the duty of state officials to intervene and stop pain and harm when they see it. Police officers may not stand by and watch other officers commit battery, and they must intervene to stop the constitutional deprivation. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Prison guards cannot ignore inmates' complaints of pain. *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015). The law is clearly established that law enforcement officials cannot stand by idly and watch constitutional violations in progress if they have the authority and capability to intervene. Ms. Gilbert had both, and a reasonable finder of fact could determine that she was deliberately indifferent to Mr. Parsons's pain and injury caused by the ankle monitor that she could have caused to be adjusted, removed, or relocated.

Ms. Gilbert is therefore **not entitled to qualified immunity**.

Finally, Ms. Gilbert presents several other alternative arguments to support her motion for summary judgment. Those contentions have been addressed above when addressing the question of whether there had been a *deprivation* of a constitutional right. The arguments at best create fact questions for the jury. On summary judgment, the facts must be viewed in a light most favorable to Mr. Parsons, and a reasonable fact finder could determine that Ms. Gilbert was deliberately

indifferent to Mr. Parsons's requests for help despite plainly visible circumstances calling for immediate intervention.

Ms. Gilbert's motion for summary judgment on Mr. Parsons's second claim is **denied**.

## V. Conclusion

Ms. Gilbert's motion for summary judgment, dkt. [21], on Mr. Parsons's deliberate indifference to serious medical needs claim is **granted** and that claim is **dismissed**. Summary judgment on the second claim, deliberate indifference to Mr. Parsons's pain and the harm caused by the GPS ankle monitor is **denied** and that claim will proceed to trial. No partial judgment will enter at this time.

Because this action will be resolved either by trial or settlement, the Court on its own motion reconsiders Mr. Parsons's September 21, 2017, motion for assistance with recruiting counsel. That motion, dkt. [28], is **granted**. The Court will attempt to recruit counsel for Mr. Parsons to assist him in final preparations for trial, for settlement discussions, and for jury or non-jury trial. The Magistrate Judge is requested to schedule this action for a status conference at his earliest opportunity to discuss what remains to be done in preparation for trial and for the possibility of settlement.

**IT IS SO ORDERED**.

Date: 2/13/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

CHARLES PARSONS
984131
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

David A. Arthur
OFFICE OF THE ATTORNEY GENERAL
David.Arthur@atg.in.gov

Andrew Scheil
INDIANA ATTORNEY GENERAL
Andrew.Scheil@atg.in.gov